UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

FISHER SIGERSON MORRISON LLC,

                              Plaintiff,

         v.

KARI SIGERSON AND MIRANDA MORRISON,

                         Defendants.

:
:
:    11-cv-3440 (PKC)
:
:
:
:
:
:

-------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION,
BY ORDER TO SHOW CAUSE, FOR A TEMPORARY
<u>RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

Marc E. Kasowitz
Hector Torres
David J. Abrams
Jonathan E. Minsker


KASOWITZ, BENSON, TORRES &
  FRIEDMAN LLP
1633 Broadway
New York, NY 10019
Phone: (212) 506-1700
Fax: (212) 506-1800

*Attorneys for Plaintiff Fisher Sigerson
  Morrison LLC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ......................................................................................... 2

ARGUMENT .............................................................................................................. 3

    A.   Plaintiff FSM Should Be Granted a Temporary Restraining Order and
          Preliminary Injunctive Relief ............................................................................ 3

    B.   FSM's Trademark Claims Are Likely To Succeed on the Merits Because
          There Has Already Been, and Will Continue to Be, Actual Confusion as to
          Whether the SIGERSON MORRISON Brand is Being Discontinued and
          SIGERSON MORRISON is Going Out of Business ....................................... 4

          1.   FSM Has the Exclusive Right To Use The SIGERSON MORRISON®
                Marks In Association With Footwear, Handbags and Leather Goods ............... 5

          2.   Defendant's Use Of The "Sigerson Morrison" Names In Association
                With The Unauthorized Sale Has Already Caused, And Is Likely to
                Cause, Further Consumer Confusion As To The Source And Sponsorship
                Of The Unauthorized Sale ................................................................................ 7

          3.   Plaintiff Is Also Likely To Succeed On Its Breach of Contract and
                State Law Infringement Causes of Action ...................................................... 12

    C.   FSM Will Be Irreparably Harmed if Injunctive Relief is Not Granted ...................... 14

    D.   The Balancing Of The Equities Sharply Favors Plaintiff ............................................ 17

CONCLUSION ......................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abercrombie & Fitch Co. v. Hunting World, Inc.,*
    537 F.2d 4 (2d Cir. 1976) ......................................................................................6

*Aetna Ins. Co. v. Capasso,*
    75 N.Y.2d 860 (1990) ...........................................................................................3

*Am. Cyanamid Co. v. Campagna Per Le Farmacie In Italia S.P.A.,*
    847 F.2d 53 (2d Cir. 1988) ..................................................................................15

*Best Cellars, Inc. v. Grape Finds at Dupont, Inc.,*
    90 F. Supp. 2d 431 (S.D.N.Y. 2000) ..................................................................12

*Bottenkill Veterinary Equine P.C. v. Cangelosi,*
    768 N.Y.S.2d 504 (3d Dep't 2003) .....................................................................16

*Burmax Co., Inc. v. B&S Indus.,*
    135 A.D.2d 599, 522 N.Y.S.2d 177 (2d Dep't 1987)..........................................17

*Cadbury Beverages, Inc. v. Cott Corp.,*
    73 F.3d 474 (2d Cir. 1996) ...............................................................................8, 11

*Chambers v. Time Warner, Inc.,*
    282 F. 3d 147 (2d Cir. 2002) ................................................................................5

*Chernoff Diamond & Co. v. Fitzmaurice, Inc.,*
    234 A.D.2d 200, 651 N.Y.S.2d 504 (1st Dep't 1996) ..........................................3

*Chips'N Twigs, Inc. v. Chip-Chip, Ltd.,*
    414 F. Supp. 1003 (E.D.Pa. 1976) ......................................................................15

*Destiny USA Holdings, LLC v. Citigroup Global Markets Realty Corp.,*
    889 N.Y.S.2d 793 (4th Dep't 2009) ....................................................................16

*Equibrand Corp. v. Reinsman Equestrian Prods., Inc.,*
    No. 3:07-CV-CV-0536-P, 2007 U.S. Dist. LEXIS 36229 (N.D. Tx. May 17, 2007) ............18

*Fed. Treasury Enters. Sojuzplodoimport v. Spirits Int'l N.V.,*
    623 F.3d 61 (2d Cir. 2010) ...................................................................................4

*Four Times Square Assoc., LLC v. Cigna Invs., Inc.,*
    306 A.D.2d 4, 764 N.Y.S.2d 1 (1st Dep't 2003) ..................................................3

*Francis S. Denney, Inc. v. I.S. Labs., Inc.*,
    758 F. Supp. 140 (S.D.N.Y. 1990) .................................................................................. 9, 18

*Fruit-Ices Corp. v. Coolbrands Int'l Inc.*,
    335 F. Supp. 2d 412 (S.D.N.Y. 2004) ................................................................................. 10

*Gambar Enters., Inc. v. Kelly Servs., Inc.*,
    69 A.D.2d 297, 418 N.Y.S.2d 818 (4th Dep't 1979) ............................................................. 4

*George Restauration S.A. v. Little Rest Twelve, Inc.*,
    58 A.D.3d 428, 871 N.Y.S.2d 65 (1st Dep't 2009) ...................................................... 7, 8, 9

*Gruner + Jahr USA Publishing v. Meredith Corp.*,
    991 F.2d 1072 (2d Cir. 1993) ............................................................................................. 11

*Hasbro, Inc. v. Lanard Toys. Ltd.*,
    858 F.2d 70 (2d Cir. 1988) ................................................................................................ 15

*Ikon Office Solutions, Inc. v. Usherwood Office Tech. Inc.*,
    No. 9202-08, 2008 N.Y. Misc. LEXIS 7059 (N.Y. Sup. Ct. Dec. 12, 2008) .......................... 14

*Jacob H. Rottkamp & Son, Inc. v. Wulforst Farms, LLC*,
    844 N.Y.S.2d 600, 605 (N.Y. Sup. Ct. 2007) ...................................................................... 16

*Konishi v. Por Kung Lin*,
    88 A.D.2d 905, 450 N.Y.S.2d 585 (2d Dep't 1982) .............................................................. 17

*Kraft Gen. Foods v. Allied Old English*,
    831 F. Supp. 123 (S.D.N.Y. 1993) ..................................................................................... 15

*Levitt Corp. v. Levitt*,
    593 F.2d 463 (2d Cir. 1979) ............................................................................................... 18

*Life Indus. Corp. v. Star Brite Distrib., Inc.*,
    31 F.3d 42 (2d Cir. 1994) .................................................................................................. 12

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*,
    799 F.2d 867 (2d Cir. 1986) ............................................................................................... 11

*Morningside Group, Ltd. v. Morningside Capital Group, L.L.C.*,
    182 F.3d 133 (2d Cir. 1999) .............................................................................................. 12

*Mr. Natural, Inc. v. Unadulterated Food Prods., Inc.*,
    152 A.D.2d 729, 544 N.Y.S.2d 182 (2d Dep't 1989) ............................................................. 3

*Nikon Inc. v. Ikon Corp.*,
    987 F.2d 91 (2d Cir. 1993) .............................................................................................. 9, 12

*Paddington Corp. v. Attiki Importers & Distribs., Inc.,*
   996 F.2d 577 (2d Cir. 1987) ................................................................................ 11

*Polaroid Corp. v Polarad Elecs. Corp.,*
   287 F.2d 492 (2d Cir 1961), *cert denied* 368 U.S. 820 (1961)........................7, 8, 9

*Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc.,*
   754 F.2d 91 (2d Cir. 1985) ...........................................................................15, 16

*Register.com, Inc. v. Verio, Inc.,*
   356 F.3d 393 (2d Cir. 2004) ................................................................................ 4

*Russian Kurier, Inc. v. Russian Am. Kurier, Inc.,*
   899 F. Supp. 1204 (S.D.N.Y. 1995) ................................................................... 17

*Schlosser v. United Presbyterian Home, Inc.,*
   56 A.D.2d 615, 391 N.Y.S.2d 880 (2d Dep't 1977)............................................. 3

*Simon & Schuster, Inc. v. Dove Audio, Inc.,*
   970 F. Supp. 279 (S.D.N.Y. 1997) ...................................................................... 8

*Sunward Elec., Inc. v. McDonald,*
   362 F.3d 17 (2d Cir. 2004) ............................................................................. 4, 9

*The Sports Authority, Inc. v. Prime Hospitality Corp.,*
   89 F.3d 955 (2d Cir.1996) ............................................................................5, 7, 9

*Topps Co. Inc. v. Gerrit J. Verburg Co.,*
   No. 96 Civ. 7302, 1996 U.S. Dist. LEXIS 18556 (S.D.N.Y. Dec. 12, 1996) .......... 8

*Travellers Int'l AG v. Trans World Airlines, Inc.,*
   684 F. Supp. 1206 (S.D.N.Y. 1988) ................................................................... 16

*Tri-Star Pictures, Inc. v. Unger,*
   14 F. Supp. 2d 339 (S.D.N.Y. 1998) ................................................................. 13

*Virgin Enters. Ltd. v. Nawab,*
   335 F.3d 141 (2d Cir. 2003) ...........................................................................9, 10

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.,*
   529 U.S. 205 (2000) .......................................................................................... 5

**STATUTES**

15 U.S.C. § 1114(a)(1) .......................................................................................... 4

15 U.S.C. § 1125(a).............................................................................................. 4

CPLR § 6301 ................................................................................................... 1, 3

CPLR § 6312(a) ................................................................................................................. 1

CPLR § 6313 ..................................................................................................................... 1

N.Y. General Business Law § 133 .................................................................................. 13

N.Y. General Business Law § 360 .................................................................................. 13

Plaintiff Fisher Sigerson Morrison LLC ( "FSM"), by its attorneys, Kasowitz, Benson, Torres & Friedman LLP, submits this memorandum of law in support of its motion, by order to show cause, pursuant to CPLR §§ 6301, 6312(a) and 6313, for a temporary restraining order and preliminary injunction restraining and enjoining defendants Kari Sigerson ("Sigerson") and Miranda Morrison ("Morrison"), and their agents, employees and all persons acting in concert with them, from (i) taking any action to promote, publicize or conduct the unauthorized sale of SIGERSON MORRISON brand merchandise that defendants have scheduled for May 20, 2011 through May 22, 2011 at the Steven Sclaroff store, located at 44 White Street, New York, New York (the "Unauthorized Sale"), or (ii) taking any action to schedule, promote, publicize or conduct any sale similar to the Unauthorized Sale at which defendants would use the SIGERSON MORRISON trademark or trade name, or any derivative thereof, in connection with any products or services that might cause confusion with the products and services offered by plaintiff, including, but not limited to, the sale of ladies shoes, boots and handbags; and directing defendants to inform Steven Sclaroff and all public relations firms, internet sites and media outlets that have reported the Unauthorized Sale that plaintiff is the sole and exclusive owner of the SIGERSON MORRISON mark, that the Unauthorized Sale was not authorized by plaintiff, and that the Unauthorized Sale has been cancelled.

## PRELIMINARY STATEMENT

FSM, the exclusive owner of the SIGERSON MORRISON trademark and trade name and all goodwill associated therewith, brings this action to enjoin and restrain the unauthorized promotion and sale of SIGERSON MORRISON brand merchandise at what has been advertised by defendants as a "blow out" going out of business sale, with substantial markdowns, being conducted from May 20 through May 22, 2011.  The Unauthorized Sale has caused actual confusion among SIGERSON MORRISON customers as to whether the SIGERSON MORRISON brand is in fact being discontinued and whether SIGERSON MORRISON is going out of business, when the opposite is true.  The promotion of the Unauthorized Sale by

1

defendants through Facebook, internet postings, media reports and e-mails to SIGERSON
MORRISON customers has caused substantial and irreparable harm to FSM by diluting FSM's
trademark and business reputation and damaging its goodwill in a manner that cannot be
quantified, which makes injunctive relief for infringement particularly appropriate.

Irreparable harm is undeniable here, based not only upon a finding of a likelihood of
confusion as to the merchandise being sold at the Unauthorized Sale and whether SIGERSON
MORRISON is going out of business, but numerous documented instances of actual confusion of
SIGERSON MORRISON customers.  FSM has demonstrated the likelihood of success on the
merits of its statutory and common law trademark and other claims, based primarily on this
actual confusion as to the status of the SIGERSON MORRISON product line and business and
defendants' breach of a Purchase Agreement between the parties, pursuant to which FSM
acquired the trademark rights to the SIGERSON MORRISON brand.

Moreover, the balancing of the equities tips decidedly in FSM's favor, where the
irreparable harm to FSM's business and reputation will continue if the Unauthorized Sale or any
similar sale is allowed to proceed.  FSM will continue to suffer irreparable harm unless and until
defendants are restrained and enjoined from their continued infringement of FSM's federally
registered and common law trademark rights, and defendants should not be allowed to profit in
any way from their infringement.

Moreover, because the Unauthorized Sale is starting on Friday, May 20, 2011, a
temporary restraining order should be issued, restraining and enjoining defendants from
promoting, publicizing or conducting the Unauthorized Sale or any similar sale in violation of
FSM's trademark rights and defendants' contractual obligations until such times as the Court
hears FSM's motion for injunctive relief.

## STATEMENT OF FACTS

The relevant facts are set forth in the accompanying Affirmation of Jonathan E. Minsker,
dated May 29, 2011, the Affidavit of Effie Petropoulos, sworn to on May 19, 2011, and the

2

Complaint dated May 19, 2011, to which the Court is respectfully referred.

## ARGUMENT

### A.      Plaintiff FSM Should Be Granted a Temporary Restraining Order and Preliminary Injunctive Relief

Under New York law, a party is entitled to preliminary injunctive relief when it has shown: (1) a likelihood of success on the merits, (2) irreparable harm absent the granting of the preliminary injunction, and (3) a balancing of the equities in its favor. *See Aetna Ins. Co. v. Capasso*, 75 N.Y.2d 860, 862 (1990); *Four Times Square Assoc., LLC v. Cigna Invs., Inc.*, 306 A.D.2d 4, 5, 764 N.Y.S.2d 1, 2 (1st Dep't 2003); *Chernoff Diamond & Co. v. Fitzmaurice, Inc.*, 234 A.D.2d 200, 201, 651 N.Y.S.2d 504, 505 (1st Dep't 1996); CPLR § 6301 ("A preliminary injunction may be granted in any action where it appears that the defendant threatens or is about to do, or is doing or procuring or suffering to be done, an act in violation of the plaintiff's rights respecting the subject of the action.").

The purpose of this type of relief is to maintain the status quo until the merits of the action may be decided. *See Schlosser v. United Presbyterian Home, Inc.*, 56 A.D.2d 615, 391 N.Y.S.2d 880, 881 (2d Dep't 1977). "[T]he existence of a factual dispute will not bar the granting of a preliminary injunction if one is necessary to preserve the status quo." *Mr. Natural, Inc. v. Unadulterated Food Prods., Inc.*, 152 A.D.2d 729, 730, 544 N.Y.S.2d 182, 183 (2d Dep't 1989). "[I]t is not for [a] court to determine the merits of an action upon a motion for a preliminary injunction; rather the purpose of the interlocutory relief is to preserve the status quo until a decision is reached on the merits." *See Gambar Enters., Inc. v. Kelly Servs., Inc.*, 69 A.D.2d 297, 306, 418 N.Y.S.2d 818, 824 (4th Dep't 1979) (citation omitted).

Preliminary injunctive relief is particularly appropriate in trademark infringement actions where, as here, defendants' infringing activities are very recent and in the absence of preliminary relief, the infringement will continue to cause marketplace injury and confusion. *See, e.g., Sunward Elec., Inc. v. McDonald*, 362 F.3d 17, 25-26 (2d Cir. 2004) (affirming grant of

preliminary injunction in trademark infringement case); *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 405-06 (2d Cir. 2004) (same). The Unauthorized Sale, which is scheduled to begin on Friday May20 and continue through the weekend, has already resulted in -- and will continue to result in -- actual confusion as to whether the SIGERSON MORRISON® brand is being discontinued and whether SIGERSON MORRISON™ is going out of business.[1]

> **B.     FSM's Trademark Claims Are Likely To Succeed on the Merits Because There Has Already Been, and Will Continue to Be, Actual Confusion as to Whether the SIGERSON MORRISON Brand is Being Discontinued and SIGERSON MORRISON is Going Out of Business**

To establish trademark infringement and unfair competition under the Lanham Act,[2] a plaintiff must establish that: (1) the mark is entitled to protection, either because it has been federally registered or because it is distinctive as to the source of the goods and services, and (2) there is a likelihood of confusion. *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000); *Chambers v. Time Warner, Inc.*, 282 F. 3d 147, 155 (2d Cir. 2002). A defendant may be liable under the Lanham Act where the defendant's actions are "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association" of the defendant's goods or services with those of the plaintiff. *See The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir.1996) (citing 15 U.S.C. § 1125(a)(1)(A)).

_____

[1] The ® designation indicates a registered trademark, while the "TM" indicator is a broader term that includes registered as well as common law trademarks and service marks.

[2] Section 1114 of the Lanham act prohibits a person from using "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(a)(1). Section 1125 extends similar protection to both registered and unregistered trademarks, prohibiting a person from using "any word, term, name, symbol, or device, or any combination thereof" that is "likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods." 15 U.S.C. § 1125(a). Federal Lanham Act claims may be brought in state court. See *Fed. Treasury Enters. Sojuzplodoimport v. Spirits Int'l N.V.*, 623 F.3d 61, 69 fn.10 (2d Cir. 2010).

FSM clearly satisfies both of these prongs and has demonstrated its likelihood of success on the merits.

### 1. FSM Has the Exclusive Right To Use The SIGERSON MORRISON® Marks In Association With Footwear, Handbags and Leather Goods

FSM is the exclusive owner of U.S. Trademark Reg. No. 2,662,215 for use of the SIGERSON MORRISON® mark as applied to "leather goods, namely handbags," and "shoes and boots." May 19, 2011 Affirmation of Jonathan E. Minsker ("Minsker Aff.") Exs. 2, 3, 4, and 5. As a federally-registered trademark, SIGERSON MORRISON® is entitled to protection under the Lanham Act.

Moreover, the SIGERSON MORRISON family of marks is strong and entitled to protection. SIGERSON MORRISON® is a well-known brand of high quality ladies footwear and handbags. The brand has been highlighted in numerous fashion magazines, including Vogue®, Elle®, and Harper's Bazaar®, and has been featured in countless fashion layouts and runway shows. *See, e.g., http://www.sigersonmorrison.com/shop/#/press/.* The shoes are sold through high-end stores such as Barneys, Nieman Marcus, Saks Fifth Avenue, Bergdorf Goodman and department and boutique stores with similar reputations for carrying luxury, designer merchandise. *See, e.g.,* Minsker Aff. Exs. 6 and 7. FSM also uses the distinctive[3] SIGERSON MORRISON™ brand name in association with boutique stores, in California and New York, that sell SIGERSON MORRISON® brand shoes. *See id.* Ex. 8.

Moreover, FSM has expended considerable efforts to maintain the quality and

---

[3] The four categories that measure the degree of protection a mark merits are, from weakest to strongest: (1) generic; (2) descriptive; (3) suggestive, and (4) arbitrary or fanciful. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976). Arbitrary or fanciful marks, the strongest, do not communicate any information about the product either directly or by suggestion. *See Abercrombie, 537 F.2d at 9-11.* The terms "Sigerson" and "Morrison" are arbitrary or fanciful with respect to shoes and shoe stores because the two words themselves do not communicate any information about the product.

distinctiveness of the SIGERSON MORRISON™ stores. For example, the Store Agreement[4] provides that defendants will "respect the same retail prices as the other Sigerson Morrison" stores, and will "follow the same calendars of seasonal discounts and promotions"; that defendants will pay a one half percent (0.5%) royalty rate on net sales to FSM" for use of the SIGERSON MORRISON trademarks; and that FSM will be entitled to proceeds of the sale of the Store's inventory if defendants fail to make timely payment to FSM for such inventory. Minsker Aff. Ex. 12. Moreover, customers have come to associate the SIGERSON MORRISON™ stores with high-quality SIGERSON MORRISON® shoes. *See, e.g.,* May 19, 2011 Affidavit of Effie Petropoulos ("Petropoulos Aff.") ¶ 7 and Ex. 1.

Defendants have no rights or authority to use the "Sigerson" or "Morrison" names in any way that is confusingly similar to plaintiff's use. Indeed, defendants have acknowledged this limitation through an express provision in Section 4.02 of the Purchase Agreement. Minsker Aff. Ex. 9. This provision states that FSM acquired, among other things, "all rights to the name Sigerson Morrison and any name similar thereto or variation thereof, and all intellectual property including, but not limited to, trade names, trademarks, patents and patent and trademark applications, copyrights, inventions, trade names, licenses [and] logos. *Id.* § 4.02. Pursuant to the same provision, defendants agree not to use the "Sigerson & Morrison" trade name "or any derivatives thereof, in connection with any products and/or services which might cause confusion in the marketplace with any [of] the products and/or services offered by" FSM. *Id.* Moreover, defendants acknowledged that FSM would be irreparably damaged if defendants used the names or trade name "Sigerson & Morrison," or any derivative thereof, in connection with any products or any services that might cause confusion with the products and services offered by FSM. *Id.*

---

[4] On or about March 4, 2010, FSM and defendants entered into an agreement to govern the operation of the 71st Street SIGERSON MORRISON™ Store (the "Store Agreement"). This store has since closed.

In sum, the SIGERSON MORRISON® brand name as used on shoes, and handbags, and the SIGERSON MORRISON™ common-law trade and service mark as used in its stores, is firmly established as a source for high-quality ladies shoes and handbags, exclusively owned by FSM, and fully entitled to trademark protection.

**2. Defendant's Use Of The "Sigerson Morrison" Names In Association With The Unauthorized Sale Has Already Caused, And Is Likely to Case Further Consumer Confusion As To The Source And Sponsorship Of The Unauthorized Sale**

Likelihood of confusion is determined under an objective, eight-factor test that requires the court to consider the strength of plaintiff's mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, the defendant's bad faith in adopting its mark, the quality of defendant's product, and the sophistication of the buyers. *Polaroid Corp. v Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir 1961), *cert denied* 368 U.S. 820, 82 S. Ct. 36, 7 L. Ed. 2d 25 (1961); *see also George Restauration S.A. v. Little Rest Twelve, Inc.*, 58 A.D.3d 428, 429, 871 N.Y.S.2d 65, 67 (1st Dep't 2009) (*Polaroid* test considered when ruling on injunctive relief).

Where, as here, "the marks are identical, and the goods are also identical and directly competitive, the [likelihood of confusion] decision can be made directly without a formal and complete discussion of all of the *Polaroid* factors." *See The Sports Authority*, 89 F.3d at 960 (citing *Topps Co. Inc. v. Gerrit J. Verburg Co.*, No. 96 Civ. 7302, 1996 U.S. Dist. LEXIS 18556, at *18 (S.D.N.Y. Dec. 12, 1996)). Defendants here are using the identical marks to promote the identical goods. They promote a "Final Sale" from the "Sigerson Morrison Lab Boutique," and repeatedly use the names "Sigerson" and "Morrison" to identify the source of the advertised "shoes," "handbags," and "accessories." Minsker Aff. Exs. 19 and 20; *see also* Exs. 16, 17 and 18. These names are identical or nearly identical to FSM's exclusive SIGERSON

MORRISON® mark for shoes and handbags, and FMS's exclusive right to use this mark.[5]  The

products being sold, "shoe[s], boots, and sandals," as well as "bags," Minsker Aff. Ex. 20, are

identical to those sold under FSM's protected mark and in its stores, and for which FSM has a

U.S. Registered Trademark— specifically "leather goods, namely handbags," and "shoes and

boots."  Minsker Aff. Ex. 2.

As here, where the identical mark is being used for the identical products, courts

frequently find a likelihood of confusion.  *See George Restauration*, 58 A.D.3d at 429, 871

N.Y.S.2d at 67 (use of BUDDHA BAR NYC for use in a restaurant/bar likely to be confusing

with federally registered trademarks for BUDDHA BAR® and BUDDHA-BAR® for use in

restaurant/bars); *see also Topps Co. Inc. v. Gerrit J. Verburg Co.*, No. 96 Civ. 7302, 1996 U.S.

Dist. LEXIS 18556, at *18 (S.D.N.Y. Dec. 12, 1996) (granting preliminary injunction when "the

two products are sufficiently identical to result in confusing the consumer in the belief that they

are both from the same source, or that there is at least common sponsorship," and without

consulting remaining *Polaroid* factors).  Accordingly, the degree of similarity between the two

marks, the proximity of the products, and the likelihood that the prior owner will bridge the gap

factors strongly favor FSM.[6]

---

[5] Defendants' addition of the words "Lab Boutique" to the end of FSM's protected mark does not
decrease the similarities of the marks. *Cf. Simon & Schuster, Inc. v. Dove Audio, Inc.*, 970 F.
Supp. 279, 297-98 (S.D.N.Y. 1997) (permanently enjoining defendant from using the titles "The
Children's Audiobook of Virtues" and "The Children's Book of Virtues" – although not identical
to plaintiff's title "The Book of Virtues" – because "[t]he addition of the word 'Children's' and
the word 'Audio' on [Defendant]'s audiobook do not fundamentally change the character of
plaintiffs' mark").

[6] The "competitive proximity of the products" factor considers "whether and to what extent the
two products compete with each other" such that customers are likely to be confused as to the
source of the products. *See e.g., Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 480 (2d
Cir. 1996).  "The closer the secondary user's goods are to those the consumer has seen marketed
under the prior user's brand, the more likely that the consumer will mistakenly assume a
common source." *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 150 (2d Cir. 2003). Because
Fisher and Defendants already sell to the same markets, there is no need to further assess the
possibility of "bridging the gap," because this factor "turns on the likelihood of whether the

The likelihood of confusion is especially strong where, as here, the marks are not only identical, but the infringers were formerly associated with the mark. Use by a former owner creates "an increased danger that consumers will be confused and believe that the former licensee is still an authorized representative of the trademark holder." *Sunward Elecs.*, 362 F.3d at 25. In such a case, "the reasons for issuing a preliminary injunction for trademark infringement are more compelling than in the ordinary case." *George Restauration,* 58 A.D.3d at 429, 871 N.Y.S.2d at 67. "Once a business sells its goodwill and trademarks, the prior owner may no longer refer to the history of the business in attempts to market competing products." *Francis S. Denney, Inc. v. I.S. Labs., Inc.*, 758 F. Supp. 140, 145 (S.D.N.Y. 1990) (citing *Levitt Corp. v. Levitt*, 593 F.2d 463, 468 (2d Cir. 1979)).

Considering the identity of the marks and the goods, likelihood of confusion is established, and the Court need not consider the remaining *Polaroid* factors. *See The Sports Authority*, 89 F.3d at 960 ("Where the marks are identical, and the goods are also identical and directly competitive, the decision can be made directly without a formal and complete discussion of all of the Polaroid factors."). Nonetheless, additional factors strongly establish a likelihood of confusion, and support a preliminary injunction.

For example, the instances of actual confusion in this case are extremely convincing evidence that injunctive relief is appropriate. *See Francis S. Denney, Inc. v. I.S. Labs., Inc.*, 758 F. Supp. 140, 145 (S.D.N.Y. 1990) ("While actual confusion to the public is not necessary to establish that confusion is likely, instances of actual confusion are extremely persuasive evidence of likelihood of confusion.") (citing *Gucci v. Gucci Shops, Inc.*, 688 F. Supp. 916, 926 (S.D.N.Y. 1988)). Multiple FSM customers have mistakenly concluded that the "Final Sale" sponsored by "Sigerson and Morrison" or the "Sigerson Morrison Lab Boutique" was in fact associated with FSM, and that the SIGERSON MORRISON® brand of shoes, and the SIGERSON

---

senior user will enter the market of the junior user." *Nikon Inc. v. Ikon Corp.*, 987 F.2d 91, 95 (2d Cir. 1993).

MORRISON™ stores in SoHo, were going out of business. *See* Petropoulos Aff. ¶¶ 3-11.

Courts have frequently found that actual confusion, as present here, supports a preliminary injunction. For example, in *Virgin Enterprises Ltd. v. Nawab*, the plaintiff submitted to the court an affidavit attesting to an instance of confusion of the defendants' kiosk with plaintiff's store. *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 151 (2d Cir. 2003). The court, in granting the injunction, declared: "[i]t is self-evident that the existence of actual consumer confusion indicates a likelihood of consumer confusion. We have therefore deemed evidence of actual confusion particularly relevant." *Id.* (internal citations and quotation marks omitted); *see also Fruit-Ices Corp. v. Coolbrands Int'l Inc.*, 335 F. Supp. 2d 412, 426 (S.D.N.Y. 2004) (preliminary injunction granted when plaintiff's customer service representative received two calls from confused customers, one of which expressed concern that plaintiff was discontinuing its product or changing its name). Defendants' promotional activities for the Sale have created the false impression that SIGERSON MORRISON™ stores are closing and that FSM will no longer produce and sell SIGERSON MORRISON shoes. For example, an article published on May 17, 2011 on the website *http://ny.racked.com* and linked on Sigerson's Facebook page, ran with the headline "Sigerson, Morrison Say Good-bye With A Three-Day Giant Sale", and stated in its opening line: "[D]etermined to go out with a bang, Sigerson Morrison founders Kari Sigerson and Miranda Morrison are planning the best last hurrah of all: a blowout sale!" At least two other websites have run similar stories. *See* Minsker Exs. 16, 17, and 18. Considering further that many of FSM's customers mistakenly believe that FSM is going out of business, Petropoulos Aff. ¶¶ 3-11, *Fruit Ices* and *Virgin Enters.* are directly on point.

Evidence that defendants engaged in bad faith conduct is provided by their use of the term "final sale," and the "Sigerson" and "Morrison" names, which shows that defendants intended to cause customer confusion. Courts have found bad faith where the similarity between plaintiff's mark and defendant's alleged infringing use is "so strong that it seems plain that deliberate copying has occurred." *Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577, 587 (2d Cir. 1987). Here, defendants were under a contractual obligation not to use

the names "Sigerson" and "Morrison" in connection with "any products and/or services which might cause confusion in the marketplace with any [of] the products and/or services offered by" FSM. Minsker Aff. Ex. 9, § 4.02. Thus, defendants cannot claim that the use of the mark was somehow inadvertent. Yet, the entire Unauthorized Sale has been advertised as being sponsored by Sigerson and Morrison.

Moreover, defendants appear to be divesting themselves of inventory through this "blowout" sale, on which FSM holds a claim , as defendants still owe FSM approximately $350,000 for SIGERSON MORRISON® merchandise that FSM provided to defendants for sale at the 71st Street Store. *See* Minsker Aff. Ex. 15. The likelihood that defendants are using these marks in bad faith strongly supports FSM's likelihood of success on the merits.

FSM's mark is unquestionably strong, which further favors FSM. The "strength" of a mark refers to its "distinctiveness," or the mark's "tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." *Cadbury Beverages v. Cott Corp.*, 73 F.3d 474, 479 (2d Cir. 1996). Here, the SIGERSON MORRISON® mark has a presumption of distinctiveness because it has been registered with the Patent and Trademark office. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986) ("[R]egistered trademarks are presumed to be distinctive and should be afforded the utmost protection"). The mark is also strong because it is fanciful -- that is, it is a term without any dictionary meaning. *Gruner + Jahr USA Publishing v. Meredith Corp.*, 991 F.2d 1072, 1075-76 (2d Cir. 1993). Unlike a generic term, which can never be a valid trademark, or a descriptive term, which can be protected only if it has acquired "secondary meaning," a fanciful trademark "is entitled to the most protection the Lanham Act can provide." *Lois Sportswear*, 799 F.2d at 871. Further, the FSM and its predecessors have sold SIGERSON MORRISON® shoes, at SIGERSON MORRISON™ stores, since the 1990s. *See Life Indus. Corp. v. Star Brite Distrib., Inc.*, 31 F.3d 42, 46 (2d Cir. 1994) (fanciful and long-used trade dress considered "strong").

As to the quality of defendants' product, the nature of defendants' advertisements has caused multiple customers to falsely believe that FSM is selling shoes through a "blow-out" sale,

11

rather than through the high-end stores where SIGERSON MORRISON® shoes are normally sold, and that FSM is going out of business. The second-rate nature of the Unauthorized Sale further supports an injunction.[7] *See Morningside Group, Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 142 (2d Cir. 1999); *see also Nikon Inc.*, 987 F.2d at 95 ("[A]n inferior quality product injures the senior user's reputation because people may think they come from the same source.").

\* \* \*

While the above factors are "meant to be a guide, the inquiry ultimately hinges on whether an ordinarily prudent person would be confused as to the source of the allegedly infringing product." *Best Cellars, Inc. v. Grape Finds at Dupont, Inc.*, 90 F. Supp. 2d 431, 454 (S.D.N.Y. 2000). Given the multiple examples of actual confusion, and the fact that the Unauthorized Sale is being promoted by the former trademark holders, defendants' actions are undoubtedly likely to confuse consumers into mistakenly believing that FSM is sponsoring or is otherwise associated with defendants' "blowout" sale because SIGERSON MORRISON is going out of business.

### 3. Plaintiff Is Also Likely To Succeed On Its Breach of Contract and State Law Infringement Causes of Action

FSM, in its complaint, is also asserting breach of contract, as well as trademark infringement and unfair competition under New York State Law. FSM is also likely to succeed on these causes of action.

Under New York law, common law trademark claims are analyzed in substantially the same manner as trademark claims brought under the Lanham Act. *Tri-Star Pictures, Inc. v. Unger,* 14 F. Supp. 2d 339, 359 n.18 (S.D.N.Y. 1998) (trademark infringement standards are

---

[7] Courts have "taken two approaches about the quality of the junior user's product: (1) an inferior quality product injures the senior user's reputation because people may think they come from the same source; or (2) a product of equal quality promotes confusion that they come from the same source." *Nikon, Inc. v. Ikon Corp.*, 987 F.2d 91, 95 (2d Cir. N.Y. 1993). Here, in either event, customers have been confused about the sponsorship of the Unauthorized Sale.

"essentially the same"). Injunctive relief is also available for plaintiff's state law trademark infringement claims under N.Y. General Business Law § 360-l, which provides that a "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark, registered or not registered, or in cases of unfair competition, notwithstanding the absence of competition between the parties or in the absence of confusion as to the source of goods or services." N.Y. Gen. Bus. § 360, *see also Id.* § 133.

As for the breach of contract claims, an Asset and Stock Purchase Agreement among FSM, defendants and defendants' affiliated entities (the "Purchase Agreement") provides that FSM acquired, among other things, "all rights to the name Sigerson Morrison and any name similar thereto or variation thereof, and all intellectual property including, but not limited to, trade names, trademarks, patents and patent and trademark applications, copyrights, inventions, trade names, licenses [and] logos." Minsker Aff. Ex. 9 § 2.01 (and see definition for "Acquired Assets."). Defendants have breached the Purchase Agreement by, among other things, using the SIGERSON MORRISON trademark and trade name, and derivatives thereof, in connection with promoting the Unauthorized Sale in a manner that causes confusion in the marketplace with respect to the products and services offered by FSM.

Each defendant also entered into an employment agreement with FSM (the "Employment Agreements"). Under those agreements, each defendant agrees not to make any statement during the term of the non-compete period that "in any way adversely affect[s]" the reputation of FSM, Minsker Aff. Exs. 10 and 11, § 12, and further agreed not to engage in any business that competes with FSM for a period of twelve months after termination of defendants' employment by FSM *Id.* § 11(a). (Defendants were terminated in March of 2011. *See* Minsker Aff. Exs. 13 and 14.) By promoting the Unauthorized Sale, defendants have breached the Employment Agreements by, among other things, engaging in a business that competes with FSM within a period of twelve months after termination of defendants' employment by FSM, and making statements during the term of the non-compete period that adversely affect the reputation of

13

FSM.

Preliminary injunctive relief should be granted for the additional reason of enforcing the restrictive covenant in the employment agreements executed by the defendants. *See Ikon Office Solutions, Inc. v. Usherwood Office Tech. Inc.*, No. 9202-08, 2008 N.Y. Misc. LEXIS 7059, at *48-*49 (N.Y. Sup. Ct. Dec. 12, 2008). Section 14 of the Employment Agreements provides that the non-compete and non-disparagement covenants contained in Sections 11 and 12, among others, "shall be enforceable by a court of equity through the granting of a temporary restraining order, preliminary injunction or permanent injunction." Minsker Aff. Exs.10 and 11, § 14.

In *Ikon*, the court noted that irreparable harm is routinely found in cases where there is difficulty in calculating an award of monetary damages that would successfully redress the loss of customer goodwill and long-term clients to a competitor. *Id.* It also stated that its finding of irreparable harm was "reinforced by the employment agreements signed by the individual defendants, which acknowledge that a violation of the post-employment covenants would irreparably harm [plaintiff]and consent to the entry of injunctive relief on that basis." *Id.* Indeed, defendants' acknowledgment of irreparable harm, like the *Ikon* defendants' acknowledgment, "might arguably be viewed as an admission by [the individual defendants] that plaintiff will suffer irreparable harm were he to breach the contract's non-compete provision." *Id.* (internal quotations and citation omitted).

### C.     FSM Will Be Irreparably Harmed if Injunctive Relief is Not Granted

Unless the Unauthorized Sale and its promotion by Sigerson and Morrison are enjoined, FSM will continue to suffer substantial and irreparable harm. In the trademark context, "a showing of likelihood of confusion as to source or sponsorship establishes the requisite likelihood of success on the merits as well as risk of irreparable harm." *Am. Cyanamid Co. v. Campagna Per Le Farmacie In Italia S.P.A.,* 847 F.2d 53, 54-55 (2d Cir. 1988) (internal quotations omitted); *see also Hasbro, Inc. v. Lanard Toys. Ltd.,* 858 F.2d 70, 73 (2d Cir. 1988) ("In a Lanham Act case a showing of likelihood of confusion establishes both a likelihood of

success on the merits and irreparable harm."). Irreparable harm is demonstrated where, as here, the injury caused by damage to a company's mark is inherently incapable of accurate or adequate quantification in monetary terms. *See Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc.*, 754 F.2d 91, 95 (2d Cir. 1985); *Chips'N Twigs, Inc. v. Chip-Chip, Ltd.*, 414 F. Supp. 1003, 1019 (E.D. Pa. 1976) (potential harm to reputation and goodwill by clothing maker warranted a preliminary injunction regardless of whether defendant would be able to pay damages at the end of trial).[8]

Here, there is substantial evidence not only of likelihood of confusion in the marketplace, but of actual confusion as to whether SIGERSON MORRISON is going out of business and whether the owner of the SIGERSON MORRISON trademark and trade name – FSM – is associated with defendants and approves of the Unauthorized Sale. The Petropoulos Aff. describes seven specific instances within a 24-hour period of longstanding customers and others calling the SIGERSON MORRISON boutique in New York or e-mailing the store manager to express their disappointment that the SIGERSON MORRISON™ store is going out of business and that the SIGERSON MORRISON line of goods is being discontinued, or to inquire as to whether the reports on the internet and on Facebook to that effect, as promoted by defendants, were correct. *See* Petropoulos Aff. ¶¶ 3-11.

This actual confusion has already resulted in irreparable harm by diluting the SIGERSON MORRISON trademark and trade name and damaging FSM's goodwill and business reputation. Indeed, this irreparable harm will continue – and worsen – unless the Unauthorized Sale and its promotion are enjoined, and defendants are enjoined from any further use of the SIGERSON

---

[8] The same analysis applies to FSM's state law claims. *See Kraft Gen. Foods v. Allied Old English*, 831 F. Supp. 123,127 (S.D.N.Y. 1993) ("[T]he injury resulting from trademark dilution, or unfair competition [under New York State statutory and common law], is similar to a Lanham Act injury in that it is extremely unlikely that the moving party can be fully recompensed by money damages.").

MORRISON trademark and trade name, or any confusingly similar name, such as Sigerson and/or Morrison, in connection with the products and services offered by FSM.

The irreparable harm caused to the SIGERSON MORRISON trademark and trade name is further demonstrated by the fact that the loss of goodwill suffered by FSM cannot be adequately quantified in monetary terms. *See Power Test Petroleum Distribs., Inc.,* 754 F.2d at 95. Indeed, "loss of goodwill associated with a business, which is difficult to quantify, can constitute irreparable injury" even where, as here, the Complaint seeks monetary damages in addition to injunctive relief. *Bottenkill Veterinary Equine P.C. v. Cangelosi,* 768 N.Y.S.2d 504, 507 (3d Dep't 2003). Moreover, monetary damages are insufficient to compensate for the harm to FSM's business reputation resulting from the confusion as to whether the SIGERSON MORRISON brand and stores were going out of business, as well as the sale of SIGERSON MORRISON merchandise at such substantial markdowns in the Unauthorized Sale. *See Destiny USA Holdings, LLC v. Citigroup Global Markets Realty Corp.,* 889 N.Y.S.2d 793, 802 (4th Dep't 2009) (injunctive relief appropriate where there a potential for harm to business reputation); *Jacob H. Rottkamp & Son, Inc. v. Wulforst Farms, LLC,* 844 N.Y.S.2d 600, 605 (N.Y. Sup. Ct. 2007) ("evidence of potential damage to a business reputation is a sufficient basis to establish irreparable injury justifying the grant of injunctive relief"). *See also Travellers Int'l AG v. Trans World Airlines, Inc.,* 684 F. Supp. 1206, 1216 (S.D.N.Y. 1988) ("even if an entire business is not destroyed, the loss of goodwill resulting from the termination of an entire product line is often immeasurable and significant.").

In addition, the irreparable harm caused by the Unauthorized Sale and its promotion by defendants is expressly acknowledged by defendants in the Purchase Agreement. As discussed in the Complaint, the Purchase Agreement provides that FSM is irreparably damaged if defendants "use the names or trade name 'Sigerson & Morrison,' or any derivative thereof, in connection with any products or any services which might cause confusion with the products and services offered by FSM." Minsker Aff. ¶ 9, § 4.02. That is exactly what defendants are doing here, by promoting the Unauthorized Sale under their own names, in a manner specifically

designed to cause confusion.  Indeed, as the Petropoulos Aff. confirms, defendants have
succeeded in causing significant actual confusion in the marketplace as to whether the
SIGERSON & MORRISON brand and stores are going out of business.

Accordingly, FSM has demonstrated that it has been, and will continue to be, irreparably
harmed in the absence of the injunctive relief it seeks against defendants.

### D.     The Balancing Of The Equities Sharply Favors Plaintiffs

Plaintiff has also demonstrated the third prong of the test for injunctive relief: that the
equities tip decisively in its favor.  A party seeking injunctive relief must establish that the
burden caused to the defendant by the imposition of the injunction is less than the harm caused to
the plaintiff by the defendant's activities.  *See Burmax Co., Inc. v. B&S Indus.*, 135 A.D.2d 599,
601, 522 N.Y.S.2d 177, 179 (2d Dep't 1987).  Given the threat to FSM of irreparable harm, and
defendants' clear intention to misappropriate the benefits of the SIGERSON MORRISON® mark
and the success of the SIGERSON MORRISON products, the balance of the hardships strongly
favors FSM.  The balance of the equities favors injunctive relief where, as here, "it is apparent
that if relief is granted, defendant will suffer no prejudice or inconvenience, while denial of such
relief will cause plaintiff substantial and irreparable harm." *Konishi v. Por Kung Lin*, 88 A.D.2d
905, 905, 450 N.Y.S.2d 585, 585 (2d Dep't 1982).  *See also Russian Kurier, Inc. v. Russian Am.
Kurier, Inc.*, 899 F. Supp. 1204, 1212 (S.D.N.Y. 1995) (balance of hardships tips decidedly in
favor of plaintiff where plaintiff "has shown that it is subject to a threat of irreparable harm,
having shown a strong likelihood that the public will be confused" and where defendant will
merely be prevented "from using a particular name . . . [which it has] adopted long after the
plaintiff started to use it" in an "apparent effort to gain advantage in the marketplace, competing
directly against the plaintiff which had a right to use that name.").

Where, as here, defendants had previously sold their business to FSM, including the
trademark use of their names and the goodwill associated with the SIGERSON & MORRISON
brand, injunctive relief is particularly appropriate against the infringing party.  In *Levitt Corp. v.*

17

*Levitt*, 593 F.2d 463, 468 (2d Cir. 1979), an individual who had sold his namesake company and the goodwill it had accumulated over many years was enjoined from publicizing his name in association with a new competing venture. The Second Circuit noted that when a business purchases trademarks and goodwill, "the essence of what it pays for is the right to inform the public that it is in possession of the special experience and skill symbolized by the name of the original concern, and of the sole authority to market its products." *Id.* The same principle applies here, as "the value of goodwill obviously becomes diluted and sales lost if confusion arises in the mind of the public over the source of the reputable goods or services." *Id.*; *see also Francis S. Denney, Inc.,* 758 F. Supp. at 145 (injunction issued to prevent defendant from "exploiting the goodwill attendant to the [trademarked] name" after it had sold the trademark, business assets, and all of the goodwill attendant to the name to plaintiff).

Here, the dilution to the SIGERSON & MORRISON trademark and trade name and the value of the attendant goodwill caused to FSM by the Unauthorized Sale and its promotion by defendants far exceeds any possible harm caused to defendants by not proceeding with the Unauthorized Sale. The fact that defendants may suffer lost revenues from not being to market SIGERSON & MORRISON brand products at a significant discount is not a factor that tips the scales in favor of defendants. *See Equibrand Corp. v. Reinsman Equestrian Prods., Inc.,* No. 3:07-CV-CV-0536-P, 2007 U.S. Dist. LEXIS 36229, at *49-50 (N.D. Tx. May 17, 2007) ("where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense 'merits little equitable consideration'") (internal citations omitted). The injunctive relief sought by FSM does not prevent defendants from conducting business; it only seeks to enjoin the Unauthorized Sale, to minimize the actual confusion of SIGERSON & MORRISON customers that its promotion has already caused in the marketplace.

Thus, defendants cannot show any hardships that outweigh the actual confusion and substantial likelihood of additional confusion in the marketplace, as well as the irreparable injury demonstrated by FSM.

18

**CONCLUSION**

Based on the foregoing, FSM respectfully requests that the Court enter an order granting

FSM's request for a temporary restraining order and preliminary injunction as provided in the

Order to Show Cause.

Dated:   New York, New York
         May 19, 2011

                                        Respectfully submitted,

                                        KASOWITZ, BENSON, TORRES &
                                           FRIEDMAN LLP

                                        By:   _____
                                              Marc E. Kasowitz
                                              Hector Torres
                                              David J. Abrams
                                              Jonathan E. Minsker
                                              1633 Broadway
                                              New York, New York 10019
                                              Telephone: (212) 506-1700
                                              Facsimile: (212) 506-1800

                                        *Attorneys for Plaintiff Fisher Sigerson
                                            Morrison LLC*