UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                              :

FISHER SIGERSON MORRISON LLC,      :

                                              :        11-cv-3440 (PKC)

            Plaintiff,                      :

       - against -                    :

KARI SIGERSON and MIRANDA MORRISON,  :

                                              :

            Defendants.                :
------------------------------------------------------------- X

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION, BY ORDER TO SHOW CAUSE, FOR A PRELIMINARY INJUNCTION

                                Marc E. Kasowitz
                                Hector Torres
                                David J. Abrams
                                Jonathan E. Minsker

                                KASOWITZ, BENSON, TORRES &
                                 FRIEDMAN LLP
                                1633 Broadway
                                New York, NY 10019
                                Phone: (212) 506-1700
                                Fax: (212) 506-1800

                                *Attorneys for Plaintiff Fisher Sigerson*
                                   *Morrison LLC*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................. 1

THE UNDISPUTED FACTS ...................................................................................................... 1

ARGUMENT ................................................................................................................................ 4

    A.    FSM Has Demonstrated That It Is Likely To Succeed On The Merits Of Its Trademark Infringement Claims. ................................................................................ 4

        1.    FSM Acquired All Rights To The SIGERSON MORRISON Trademark And All Goodwill Associated With The Brand. ....................... 5

        2.    The Fair Use Doctrine Does Not Apply. ....................................................... 8

    B.    FSM Has Established A Strong Risk Of Irreparable Harm. ................................... 9

    C.    Injunctive Relief is Appropriate to Protect the SIGERSON MORRISON® Mark. ........................................................................................................................ 9

    D.    Defendants' Request For A Bond Should Be Denied. ........................................... 10

CONCLUSION ........................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.V. By Versace, Inc. v. Gianni Versace, S.P.A.,*
  Nos. 96 Civ. 9721, 98 Civ. 0123, 2002 U.S. Dist. LEXIS 16323 (S.D.N.Y. Sept. 3, 2002) ..................................................................................................................................6, 7

*Am. ORT, Inc. v. ORT Israel,*
  No. 07 Civ. 2332, 2009 U.S. Dist. LEXIS 10202 (S.D.N.Y. Jan. 21, 2009) ...........................10

*Centaur Commc'ns v. A/S/M Commc'ns, Inc.,*
  830 F.2d 1217 (2d Cir. 1987) ..................................................................................................10

*Dunkin' Donuts Inc. v. Albireh Donuts, Inc.,*
  96 F. Supp. 2d 146 (N.D.N.Y. 2000) ......................................................................................10

*Dutcher v. Harker,*
  377 S.W.2d 140 (Mo. Ct. App. 1964) .......................................................................................6

*E.I. Gluck Corp. v. Rothenhaus,*
  585 F. Supp. 2d 505 (S.D.N.Y. 2008) .......................................................................................9

*eBay, Inc. v. MercExchange,*
  547 U.S. 388 (2006) ..................................................................................................................9

*Equibrand Corp. v. Reinsman Equestrian Prods., Inc.*
  No. 3:07-CV-0536-P, 2007 U.S. Dist. LEXIS 36229 (N.D. Tx. May 17, 2007) .....................7

*Francis S. Denney, Inc. v. I.S. Labs., Inc.,*
  758 F. Supp. 140 (S.D.N.Y. 1990) ............................................................................................7

*Henry I. Siegel Co. v. M & R Int'l Mfg. Co.,*
  4 U.S.P.Q.2d 1154 .....................................................................................................................7

*In re Leslie Fay Co.,*
  216 B.R. 117 (Bankr. S.D.N.Y. 1997) ..................................................................................5, 7

*J.A. Apparel Corp. v. Abboud,*
  568 F.3d 390 (2d Cir. 2009) ......................................................................................................9

*J.A. Apparel Corp. v. Abboud,*
  682 F. Supp. 2d 294 (S.D.N.Y. 2010) ...........................................................................6, 7, 9, 10

*Joseph Scott Co. v. Scott Swimming Pools, Inc.,*
  764 F.2d 62 (2d Cir. 1985) ........................................................................................................6

*Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*,
    182 F.3d 133 (2d Cir. 1999) .............................................................................. 8

*N. Hess & Sons, Inc. v. Hess Apparel, Inc.*,
    No. M-82-654, 1982 U.S. Dist. LEXIS 17195 (D. Md. July 13, 1982) ................ 8

*Qualitex Co. v. Jacobson Prods. Co.*,
    514 U.S. 159 (1995) ........................................................................................ 10

*Robert Bruce, Inc. v. Sears, Roebuck & Co.*,
    343 F. Supp. 1333 (E.D. Pa. 1972) ..................................................................... 8

*Taylor Wine Co., Inc. v. Bully Hill Vineyards*,
    569 F.2d 731 (2d Cir. 1978) ............................................................................... 6

*Virgin Enters. v. Nawab*,
    335 F.3d 141 (2d Cir. 2003) ............................................................................. 10

**STATUTES**

15 U.S.C. § 1125(a)(1)(A) ........................................................................................ 4

Plaintiff Fisher Sigerson Morrison LLC ("FSM") respectfully submits this reply memorandum of law in further support of its motion for a preliminary injunction enjoining defendants from using the SIGERSON MORRISON trademark and trade name, and any derivative thereof, including, but not limited to, using either of their surnames independently (together, the "SIGERSON MORRISON Trademark" or the "Trademark"), in connection with the promotion and sale of women's shoes, handbags and related goods.

## PRELIMINARY STATEMENT

Defendants' opposition demonstrates that FSM is entitled to a preliminary injunction. Indeed, defendants fail to present any credible evidence to rebut the following dispositive points: (i) FSM owns the SIGERSON MORRISON Trademark, which is a strong and distinctive mark; (ii) defendants violated FSM's rights to that mark by promoting and advertising their Unauthorized Sale[1] as being sponsored by or affiliated with SIGERSON MORRISON; and (iii) defendants' promotion of the Unauthorized Sale caused, and continues to cause, serious and irreparable harm to FSM by misleading consumers and others, who believe that SIGERSON MORRISON is going out of business. Moreover, defendants' opposition makes clear that they intend to engage in similarly unlawful conduct by using confusingly similar derivations of the SIGERSON MORRISON Trademark, in blatant violation of their contractual, statutory, and common law obligations to FSM. As a result, defendants' conduct has caused, and will continue to cause, irreparable harm to FSM, and warrants injunctive relief.

## THE UNDISPUTED FACTS

As demonstrated in FSM's opening papers, FSM is the exclusive owner of the SIGERSON MORRISON Trademark, including U.S. Trademark Reg. No. 2,662,215 for

---

[1] Unless otherwise indicated, capitalized terms used, but not defined herein shall have the meaning ascribed to them in FSM's Memorandum of Law in Support of Plaintiff's Motion, dated May 19, 2011 ("Pl. Br.").

SIGERSON MORRISON® as applied to "leather goods, namely handbags," and "shoes and boots" and all goodwill associated therewith.[2] The Trademark is strong and valuable, representing FSM's design, manufacture, distribution and marketing of fine women's footwear and handbags in the United States and internationally.[3] FSM paid defendants over $2.4 million for the SIGERSON MORRISON Trademark, and in exchange, defendants assigned to FSM all "rights, title, and interest in and to said Marks, all registrations and applications for registration thereto, all rights derived from or associated with use of the Marks by ASSIGNOR together with the goodwill of the business symbolized by said Marks, and the right to recover for past infringement of said Marks."[4] Since then, FSM has expended more than $3 million promoting and developing the SIGERSON MORRISON Trademark (Itzkowitz Aff. ¶ 9), which has become so strong and recognizable that consumers and employees of department and specialty footwear stores, wholesalers and individuals working in the marketing, public relations and media industries often refer to SIGERSON MORRISON® footwear by using only the term "Sigerson." (*Id.* ¶ 10.)

Despite FSM's indisputable ownership of the SIGERSON MORRISON Trademark, defendants promoted the Unauthorized Sale as, among other things, a SIGERSON MORRISON "crazy," "blowout," and "final" sale. (Minsker Decl. Exs. 16-20; Supplemental Declaration of Jonathan E. Minsker ("Minsker Supp. Decl.") Exs. 1-3.)[5] This promotion inevitably and

---

[2] *See* Affidavit of Susan Itzkowitz in Support of Plaintiff's Motion for a Preliminary Injunction, dated May 26, 2011 ("Itzkowitz Aff."), ¶ 3; Minsker Decl. Exs. 2-5; Defendants' Opposition to Plaintiff's Order to Show Cause ("Def. Opp."), at 1-2; Declaration of Miranda Morrison ("Morrison Decl.") ¶ 11; Declaration of Kari Sigerson ("Sigerson Decl.") ¶ 11.

[3] Itzkowitz Aff. ¶¶ 3-10; Def. Opp. at 1; Morrison Decl. ¶ 8; Sigerson Decl. ¶ 8.

[4] Minsker Decl. Exs. 5, 10 § 2.02(a); Def. Opp. at 1-2; Morrison Decl. ¶¶ 9, 11; Sigerson Decl. ¶¶ 9, 11.

[5] Defendants' assertion that they "<u>never</u> advertised this as a going out of business sale" (Def. Opp. at 5, 13; Morrison Decl. ¶¶ 18, 24-25, 32; Sigerson Decl. ¶¶ 18, 24-25, 32), and that defendants were simply using their surnames to promote the Unauthorized Sale, is not credible and is belied by the evidence in the record. For example, Ms. Sigerson's Facebook page endorsed and promoted articles that misleadingly touted that SIGERSON MORRISON was saying "Good-bye," and Ms. Sigerson created a Facebook Event titled "SIGERSON MORRISON LAB

2

foreseeably created customer confusion and misled the public into believing that FSM was ceasing its production of SIGERSON MORRISON® products and closing SIGERSON MORRISON™ stores. (*See* Petropoulos Aff. ¶¶ 3-11; Reply Affidavit of Effie Petropoulos ("Petropoulos Reply Aff.") ¶¶ 2-8; Def. Opp. at 5; Minsker Decl. Exs. 16-20; Minsker Supp. Decl. Exs. 1-3.)[6] That confusion continues to this day, even though the Unauthorized Sale has concluded. (Petropoulos Reply Aff. ¶¶ 2-8.)

While defendants now disclaim any "present" plan to conduct another Unauthorized Sale, their papers and their conduct in this action make clear that they have every intention of continuing to use the SIGERSON MORRISON Trademark to produce footwear and other products that would be confusingly similar to FSM's protected trademark, and to try to capitalize on the goodwill of the SIGERSON MORRISON name and reputation. Indeed, despite the plain language of the Purchase Agreement and the assignment of trademarks, defendants supposedly believe that they sold and assigned FSM only the "Sigerson & Morrison" mark, and that they somehow have the right to use a different combination of the Sigerson and Morrison names without an ampersand, or the Sigerson and Morrison names independently. (*See* Reply Declaration of Jonathan E. Minsker ("Minsker Reply Decl.") ¶ 8.)[7] Defendants also believe they have the right to use the individual names SIGERSON or MORRISON in connection with the

---

BOUTIQUE SALE – THE FINAL SALE." (Minsker Decl. Ex. 20: noting "one last mega sale" and "GET IT WHILE YOU STILL CAN".)

[6] Defendants' assertion that this confusion could have resulted from a May 6, 2011 article discussing the closing of the SIGERSON MORRISON Los Angeles store is not credible. The manager of the SIGERSON MORRISON flagship store in New York City testifies that she never heard of any customer believing that FSM was closing its SIGERSON MORRISON™ stores until the week that defendants promoted their Unauthorized Sale, and that since defendant's promotion of the Unauthorized Sale, she has personally received or heard of more than ten such inquiries. (Petropoulos Aff. ¶¶ 3-11; Petropoulos Reply Aff. ¶¶ 2-8.) FSM most assuredly is not closing its stores. (Itzkowitz Aff. ¶ 24.)

[7] As set forth in the Minsker Declaration, defendants disclosed this intention in the course of settlement discussions. While FSM normally would treat such discussions as confidential and inadmissible, FSM has proffered the substance of such discussions because defendants opened the door and waived any confidentiality by disclosing the substance of settlement discussions in their opposition papers. (Crossman Decl. ¶¶ 5-11, Exs. 3-6; Def. Opp. 6-8.)

3

sale of shoes and related products. (*See* Def. Opp. at 1, 5-16; Morrison Decl. ¶¶ 30-31; Sigerson Decl. ¶¶ 30-31.)[8] Moreover, defendants intend to get back into the shoe business, but continue to refuse to agree not to use the SIGERSON MORRISON® trademark and trade name, or any confusingly similar derivatives thereof. (Minsker Reply Decl. ¶¶ 6-8, Exs. 1-2.)[9]

## ARGUMENT

A.  **FSM Has Demonstrated That It Is Likely To Succeed On The Merits Of Its Trademark Infringement Claims.**

FSM established in its opening brief that it owns strong and valid marks that are entitled to protection. (Pl. Br. at 4-7.) FSM further established that defendants' current and intended use of the SIGERSON MORRISON Trademark for the promotion and sale of women's shoes and accessories has already caused, and is likely to cause, confusion and mistake, and to deceive as to the affiliation, connection, or association of the defendants' goods and services with those of FSM, in violation of the Lanham Act. (Pl. Br. at 7-12.) *See* 15 U.S.C. § 1125(a)(1)(A).

Notwithstanding, defendants contend that they have retained the rights to use some derivation of the SIGERSON MORRISON Trademark, including the names SIGERSON and MORRISON either together or individually, because of their alleged "inherent" right to use the

---

[8] As further evidence that defendants intend to use the SIGERSON MORRISON Trademark, defendants assert that the 71st Street Store Agreement gave them a "license" to use the SIGERSON MORRISON® mark. (Def. Opp. at 4-5; Morrison Decl. ¶ 27; Sigerson Decl. ¶ 27.) However, the unambiguous purpose of that agreement was to govern the sale of SIGERSON MORRISON products at the 71st Street Store, and it is self-evident that the agreement did not grant a license to use the SIGERSON MORRISON mark outside of this context. (Minsker Decl. Ex. 12.)

[9] Defendants attempt to distract the Court from these undisputed material facts -- and the logical conclusions and inferences to be drawn from them -- by interjecting in their papers allegations concerning, among other things, the operation of FSM's business during defendants' tenure, the reasons FSM terminated defendants, defendants' current financial condition, and the procedural posture and motivations surrounding the resulting litigations. Most of these allegations are patently false and all of them are irrelevant to the issue before the Court. Accordingly, FSM will not burden the Court with a detailed response, except to note that defendants were terminated for cause and FSM is not in breach of the Employment Agreements. (Itzkowitz Aff. ¶¶ 11-23). FSM will respond in detail to these allegations in the course of the litigation to which they relate.

names, or through the fair use doctrine. (Def. Opp. at 14-18.)[10] Defendants are wrong on the facts and the law.

### 1. FSM Acquired All Rights To The SIGERSON MORRISON Trademark And All Goodwill Associated With The Brand.

Defendants' sale of their assets and trademark rights to FSM unequivocally encompasses defendants' individual surnames "Sigerson" and "Morrison," as well as any combination of those names. In connection with the Purchase Agreement, FSM paid defendants over $2.4 million to acquire defendants' shoe business, including "*all rights* to the name SIGERSON MORRISON, *and any name similar thereto or variation thereof*, and all intellectual property including, but not limited to, *trade names, trademarks* . . . [and] logos . . . ." (Minsker Decl. Ex. 9 at 1, § 2.02 (emphasis added).) As part of the same transaction, defendants further assigned to FSM all of their "right, title, and interest in and to said Marks, all registrations and applications for registration thereof, *all rights derived from or associated with use of the Marks* by [defendants] *together with the goodwill of the business symbolized by said Marks* . . . ." (*Id.* Ex. 5 at 1 (emphasis added).) Plainly, the individual names "Sigerson" and "Morrison" are "similar," "variations" of, "derived from," or otherwise "associated with" the trademark rights and goodwill that FSM purchased. Indeed, defendants concede that their individual names have a "reputation in the business." (Def. Opp. at 17.) This "reputation" is the exact "trade name" and "goodwill" that defendants sold to FSM for millions of dollars. "The sale of a trademark includes the sale of the mark along with the goodwill and tangible business assets that go along with the trademark." *In re Leslie Fay Co.*, 216 B.R. 117, 124 (Bankr. S.D.N.Y. 1997) (enjoining designer from using his surname in association with women's apparel after he sold his namesake

---

[10] Defendants' initial argument that the first sale doctrine permits defendants to sell genuine SIGERSON MORRISON® brand merchandise (Def. Opp. at 14) is not at issue on this motion, as the Unauthorized Sale has concluded and FSM now seeks to enjoin defendants from future use of their mark.

5

mark and its goodwill to debtor).[11]

Having received valuable consideration from FSM for their shoe business, the business name, and all associated goodwill, defendants are absolutely barred from arrogating to themselves the rights to their former trade name, even if that trade name includes their own surnames. The law is clear: "If an individual has previously sold use of his name and its goodwill . . . courts will be especially alert to foreclose attempts by the seller to keep for himself the essential thing sold, and also keep the price he got for it." *J.A. Apparel Corp.*, 682 F. Supp. 2d at 309.[12]

Defendants have not retained any "inherent" right to their own names in light of the sale of their marks and the associated goodwill to FSM, because continued use of their surnames, in a manner confusingly similar to FMS's use of its marks, would violate trademark law. *See A.V. By Versace, Inc. v. Gianni Versace, S.P.A.*, Nos. 96 Civ. 9721, 98 Civ. 0123, 2002 U.S. Dist. LEXIS 16323, at *38 (S.D.N.Y. Sept. 3, 2002) ("Modern jurisprudence has evolved such that there is no inherent right to use one's own name as a trademark."); *see also J.A. Apparel*, 682 F. Supp. 2d at 311-12 ("The more modern view [is that] the so-called 'sacred right' theory that every man may employ his own name in his business is not unlimited.") (internal quotation marks omitted.)[13]

"Once a business sells its goodwill and trademarks, the prior owner may no longer refer to the history of the business in attempts to market competing products." *Francis S. Denney, Inc. v.*

---

[11] *Dutcher v. Harker*, 377 S.W.2d 140, 145-147 (Mo. Ct. App. 1964), relied on by defendants, is distinguishable because, even if defendants retained some rights to their names under the *contract* (and they did not), under current *trademark* law, they cannot use their names in a manner that is confusingly similar to FSM's mark. *See J.A. Apparel Corp. v. Abboud Corp.*, 682 F. Supp. 2d 294, 312-315 (S.D.N.Y. 2010).

[12] Defendants' claim that they have inherent rights to use their names because they developed their own reputation in the business (Def. Opp. at 17) should be similarly rejected. Unlike the decisions cited by defendants, here the "reputation" at issue has been sold to FSM as part of the goodwill inherent in the brand. Indeed, in *Joseph Scott Co. v. Scott Swimming Pools, Inc.*, 764 F.2d 62, 68-69 (2d Cir. 1985), and *Taylor Wine Co., Inc. v. Bully Hill Vineyards*, 569 F.2d 731, 736 (2d Cir. 1978), the junior mark users were not -- unlike defendants here -- attempting to use their own names after selling their names and goodwill to the plaintiffs.

[13] The non-New York cases cited by defendants from 1964 and 1940 (Def. Opp. at 15-16) are simply outdated and no longer good law, as reflected by the authorities discussed above.

*I.S. Labs, Inc.*, 758 F. Supp. 140, 145 (S.D.N.Y. 1990).

Indeed, where designers have sold the marks and goodwill associated with their personal names, courts uniformly have enjoined designers from using their personal names to promote similar goods in a confusing manner. *See In re Leslie Fay Co.*, 216 B.R. at 123-26, 135-36 (enjoining a well-known fashion designer who had sold the trademarks to his name from using his name in association with clothing); *Equibrand Corp. v. Reinsman Equestrian Prods., Inc.* No. 3:07-CV-0536-P, 2007 U.S. Dist. LEXIS 36229, at *50 (N.D. Tex. May 17, 2007) (enjoining Dale Martin from promoting a new line of saddles advertised as "by Dale Martin" after he sold the rights to his name to endorse and promote saddle products); *J.A. Apparel Corp.*, 682 F. Supp. 2d at 315 (although designer retained some contract rights to his name, under trademark law he was enjoined from using his name as a confusing mark).

Nor can defendants circumvent these controlling principles of trademark law, or their contractual obligations, through the ruse of employing a slight alteration of the registered trademark, such as just their personal names. A strong likelihood of confusion remains inevitable. Indeed, in the fashion industry, individual names are synonymous with certain brand names in the eyes of the public, and brand owners are protected accordingly. *See A.V. By Versace, Inc.*, 2002 U.S. Dist. LEXIS 16323, at *43 (recognizing the fashion industry practice of referring to surnames only); *In re Leslie Fay Co.*, 216 B.R. 117 at 128 ("[T]he [personal] name Albert Nipon is itself a distinctive mark . . . . Unlike a logo or a distinctive package, the Nipon name itself, in any form, is part of the mark."); *J.A. Apparel Corp.*, 682 F. Supp. 2d at 315; *see also Henry I. Siegel Co. v. M & R Int'l Mfg. Co.*, 4 U.S.P.Q.2d 1154, 1987 TTAB LEXIS 41 (TTAB 1987) (cancelling applicant's "L.A. CHIC" mark for women's clothing because it was confusingly similar to petitioner's "CHIC" mark for women's clothing). Even outside the fashion industry context, using a portion of a mark -- as defendants intend to do -- is especially

7

confusing when, as here with defendants' surnames, that portion is a dominant or prominent portion of the mark. *Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 140 (2d Cir. 1999) (finding that "The Morningside Group Limited" was confusingly similar to "Morningside Capital Group, L.L.C." because "only one word stands out as dominant in the two names, and that -- the only arbitrary word -- is 'Morningside.'").[14] Here, there can be no serious dispute that defendants' use of the names Sigerson or Morrison, or any combination of those names, in connection with the design, marketing and sale of women's shoes and accessories will cause confusion with the SIGERSON MORRISON Trademark. (Itzkowitz Aff. ¶ 10; Petropoulos Aff. ¶¶ 3-11; Petropoulos Reply Aff. ¶¶ 2-8.)

### 2. The Fair Use Doctrine Does Not Apply.

Defendants' "fair use" argument is equally without merit. Because defendants sold the goodwill of their trademark for valuable consideration, "[they] cannot now claim fair use based on [their] desire to capitalize on that reputation. . . . New York law is clear that the seller cannot 'attempt to arrogate to himself the trade reputation for which he received valuable consideration.'" *J.A. Apparel Corp.*, 682 F. Supp. 2d at 315 (internal quotation marks omitted.) Defendants' unlawful conduct cannot be excused under the rule that fair use could apply when a name is not being used as a mark. (Def. Opp. at 17-18.) The Second Circuit has made clear that "use . . . as a mark" is "the use of [a] term as a symbol to attract public attention." *J.A. Apparel Corp. v. Abboud*, 568 F.3d 390, 420 (2d Cir. 2009). Here, there can be no doubt that defendants

---

[14] Similarly, "[t]here are a number of cases where the difference between plaintiff's and defendant's marks was the addition of a second word or name. There is ample authority . . . that the addition of the second word or name will make no difference." *Robert Bruce, Inc. v. Sears, Roebuck & Co.*, 343 F. Supp. 1333, 1345-46 (E.D. Pa. 1972) (finding trademark infringement because defendant's mark "Neets n Grubs" was confusingly similar to plaintiff's mark "Grubb," both for apparel) (citing cases); see also Pl. Br. at 7-9 (and cases cited therein). Further, defendants' purported good faith in using their names is not determinative. *See N. Hess & Sons, Inc. v. Hess Apparel, Inc.*, No. M-82-654, 1982 U.S. Dist. LEXIS 17195, at *45, *49-*50 (D. Md. July 13, 1982) (granting injunctive relief and precluding use of a surname where it had acquired secondary meaning in connection with sale of shoes and related accessories, even though junior user had a good faith intention to "capitalize only on its own excellent reputation and its own name").

8

sought to use their name as a mark -- that is, to attract public attention to their services (and their future goods) -- in order to facilitate sales (*see* Minsker Decl. Exs. 16-20; Minsker Supp. Decl. Exs. 1-3) and intend to do so in the future (*see supra* at 3-4).

**B.    FSM Has Established A Strong Risk Of Irreparable Harm.**

FSM has demonstrated manifest consumer confusion, and defendants do not -- and cannot -- dispute that such confusion and reputational harm is exactly the type of irreparable harm that cannot be compensated with money damages and warrants injunctive relief. (Pl. Br. at 14-17.) *See E.I. Gluck Corp. v. Rothenhaus*, 585 F. Supp. 2d 505, 519 (S.D.N.Y. 2008) ("On a motion for a preliminary injunction, where the plaintiff has a protected mark, a showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm.") (internal quotation marks omitted).[15] Here, FSM has submitted extensive evidence demonstrating actual consumer confusion, as well as the harm to its business reputation that has occurred, and will likely continue to occur, absent injunctive relief. (*See* Pl. Br. at 14-19.)

**C.    Injunctive Relief is Appropriate to Protect the SIGERSON MORRISON® Mark.**

There is no basis for defendants' claim that an injunction here is somehow improper or should be more narrowly tailored. "[W]here, as here . . . the infringing party has previously sold his business, including use of his name and its goodwill, to the plaintiff, sweeping injunctive relief is more tolerable." *J.A. Apparel Corp.*, 682 F. Supp. 2d at 318 (quotations and citations omitted.) Moreover, an injunction is particularly appropriate here because SIGERSON MORRISON® is a strong mark (Itzkowitz Aff. ¶¶ 3-10), and accordingly entitled to a greater

---

[15] Defendants' reliance (Def. Opp. at 10-11) on *eBay, Inc. v. MercExchange*, 547 U.S. 388 (2006) for the applicable standard for a preliminary injunction is misguided. As the court noted in *E.I. Gluck Corp.*, in trademark cases, the presumption remains that a showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm. 585 F. Supp. 2d at 519. *eBay*, by contrast, concerned a patent infringement case, which does not carry the same risk of irreparable harm to business reputation.

scope of trademark protection than would apply to a weaker mark. *See Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 167 (1995) ("Strong marks, with greater secondary meaning, receive broader protection than weak marks.") (internal quotation marks and citation omitted.)[16]

### D.   Defendants' Request For A Bond Should Be Denied.

Defendants' request (Def. Opp. at 24-25) that FSM be compelled to post a bond in the event FSM's motion for a preliminary injunction is granted should be denied. The Court may exercise its discretion to refuse to impose a bond where the "claimed economic damages . . . are no more than speculative." *Am. ORT, Inc. v. ORT Israel*, No. 07 Civ. 2332, 2009 U.S. Dist. LEXIS 10202, at *16 (S.D.N.Y. Jan. 21, 2009) (internal quotation marks omitted.) "[T]he burden is on the party seeking security to establish a rational basis for the amount of the proposed bond." *Id.* (denying defendant's motion for a bond where defendant provided only speculative evidence of harm it might suffer as a result of the preliminary injunction order) (internal quotation marks omitted); *see also Dunkin' Donuts Inc. v. Albireh Donuts, Inc.*, 96 F. Supp. 2d 146, 151 (N.D.N.Y. 2000). Here, defendants have provided no evidence in support for their request or upon which this Court could rely to determine a reasonable bond amount. Accordingly, FSM should not be required to post a bond in the event it prevails on this motion.[17]

---

[16] The SIGERSON MORRISON® mark is inherently strong because "the law accords broad, muscular protection to marks that are arbitrary or fanciful in relation to the products on which they are used, and lesser protection, or no protection at all, to marks consisting of words that identify or describe the goods or their attributes." *Virgin Enters. v. Nawab*, 335 F.3d 141, 147 (2d Cir. 2003). The mark additionally has "acquired distinctiveness," which also bears on consumer confusion, because "widespread consumer recognition of a mark previously used in commerce increases the likelihood that consumers will assume it identifies the previously familiar user, and therefore increases the likelihood of consumer confusion if the new user is in fact not related to the first." *Id.* at 148. Acquired distinctiveness is established through, among other things, advertising expenditures, unsolicited media coverage of the product, sales success, attempts to plagiarize the mark, and length and exclusivity of the mark's use. *See Centaur Commc'ns v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217, 1222 (2d Cir. 1987). All of these factors are present here. (Itzkowitz Aff. ¶¶ 3-10.)

[17] Defendants claim that FSM's First and Third causes of action should be dismissed because they are "part of the State Court Action." Def. Opp. at 23 (citing Crossman Decl. Ex. 1). Defendants are flatly incorrect. Neither Defendants' nor FSM's pending state court actions involve defendants' breaches of the Purchase Agreement or the Store Agreement, which are the basis for the First and Third Causes of Action. Compl. ¶¶ 47, 61. Accordingly, FSM's First and Third causes of action are not part of the State Court Actions and are not subject to dismissal.

## **CONCLUSION**

For the foregoing reasons, and for the reasons set forth in FSM's initial memorandum of law, the Court should grant FSM's motion for a preliminary injunction and grant such further relief as is just and proper.

Dated:   New York, New York
        May 27, 2011

Respectfully submitted,

KASOWITZ, BENSON, TORRES &
  FRIEDMAN LLP

By: _____
    Marc E. Kasowitz
    Hector Torres
    David J. Abrams
    Jonathan E. Minsker

1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

*Attorneys for Plaintiff Fisher Sigerson*
  *Morrison LLC*

11