UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- X

FISHER SIGERSON MORRISON LLC,

                            Plaintiff,

                    - against -

KARI SIGERSON and MIRANDA MORRISON,

                       Defendants.

11-cv-3440 (PKC)

**AFFIDAVIT OF
SUSAN ITZKOWITZ
IN SUPPORT
OF PLAINTIFF'S
MOTION FOR A
PRELIMINARY
INJUNCTION**

---------------------------------------------------------------------- X

STATE OF CONNECTICUT    )
                              ) ss.:
COUNTY OF FAIRFIELD     )

SUSAN ITZKOWITZ, being duly sworn, deposes and says:

1.      I am the president of Marc Fisher LLC and Affiliates ("Marc Fisher Footwear"), which holds an indirect ownership interest in Fisher Sigerson Morrison LLC ("FSM"). I submit this affidavit in support of FSM's motion for a preliminary injunction and to respond to certain assertions that were made by defendants and their counsel in their opposition to FSM's motion. I am fully familiar with the facts and circumstances stated in this affidavit, which are based upon my own personal knowledge.

2.      I have more than twenty years of experience in the wholesale industry and, in particular, the women's footwear industry. Prior to accepting my current position in 2005, I worked at Nine West Group, Inc., a well-known wholesaler and retailer of women's shoes, for nearly 19 years, holding various executive positions within the company. As president of Marc Fisher Footwear, I am responsible for, among other things, overseeing the business, sales, distribution and marketing of multiple companies under Marc Fisher Footwear, including FSM

and its brands SIGERSON MORRISON and BELLE BY SIGERSON MORRISON.

## The SIGERSON MORRISON Mark

3.      Since the early 1990s, the SIGERSON MORRISON mark has been used in conjunction with high-end, modern, stylish women's footwear and handbags.  FSM is the exclusive owner of the SIGERSON MORRISON trademark, including U.S. Trademark Reg. No. 2,662,215 for SIGERSON MORRISON® as applied to "leather goods, namely handbags," and "shoes and boots."  *See* Declaration of Jonathan E. Minsker in Support of Order to Show Cause, dated May 23, 2011 ("Minsker Decl.") Exs. 2-5.

4.      Under the SIGERSON MORRISON mark, FSM designs, manufacturers, distributes and markets fine women's footwear and handbags in the United States and internationally.  FSM has devoted personnel and other resources to develop new packaging, marketing initiatives, advertising campaigns, websites and to otherwise promote the SIGERSON MORRISON mark and SIGERSON MORRISON® footwear.  FSM placed SIGERSON MORRISON advertising in high fashion magazines and store catalogues and has garnered editorial credits in fashion and trade publications such as Vogue®, Women's Wear Daily®, Elle®, and Harper's Bazaar® both in the United States and internationally.  SIGERSON MORRISON has also been featured in many magazine fashion layouts and runway shows. Attached hereto as Exhibit 1 are true and correct copies of a selection of editorial credits and press coverage of SIGERSON MORRISON® footwear.  Additional examples can be viewed at *www.sigersonmorrison.com/shop/#/press/.*

5.      SIGERSON MORRISON® footwear has been sold through high-end stores such as Barneys, Neiman Marcus, Saks Fifth Avenue, Bergdorf Goodman, specialty boutiques and

websites with similar reputations for carrying luxury, designer merchandise. *See* Minsker Decl. Exs. 6-7.

6.      FSM also owns and operates several SIGERSON MORRISON™ boutiques selling SIGERSON MORRISON® footwear and handbags in the United States. Some of the SIGERSON MORRISON™ boutiques have been in operation since the early 1990s.

7.      Stores operating under the trademark name SIGERSON MORRISON™ are, or have been located at, among other places, 28 Prince Street, New York, New York 10012 and 8307 W. 3rd Street, Los Angeles, California 90048. In addition, a SIGERSON MORRISON™ store not owned by FSM, but instead an entity owned and operated by defendants, was located at 19 East 71st Street, New York, New York 10021 (the "71st Street Store") until defendants closed the store earlier this year. *See* Minsker Decl. Ex. 8. I am familiar with the 71st Street Store, and the signage used there, and the 71st Street Store was called SIGERSON MORRISON.

8.      The SIGERSON MORRISON™ stores are high-end footwear boutiques providing a high-end shopping experience for the consumer. Each SIGERSON MORRISON™ store has been designed to be consistent with the profile and aesthetic of the SIGERSON MORRISON brand.

9.      Since FSM acquired the SIGERSON MORRISON brand, FSM has spent substantial sums to promote the brand through print advertising, marketing, social media, store catalogues, public relations initiatives and in store events. In addition, FSM created a website for the SIGERSON MORRISON brand and rebranded the logo and packaging to strengthen the brand. FSM has spent approximately $3 million on advertising and marketing the SIGERSON MORISON brand in the United States and internationally. These promotional materials not only

3

distinguish SIGERSON MORRISON as a high-quality footwear brand, but also identify

SIGERSON MORRISON™ stores as carrying high-quality merchandise and providing a

designer oriented shopping experience.  Attached hereto as Exhibits 2 and 3, respectively, are

true and correct copies of a SIGERSON MORRISON advertisement as seen in national fashion

magazines and marketing materials featuring SIGERSON MORRISON™ stores.

10.     Not only is the SIGERSON MORRISON brand a valuable mark, but derivatives

of that brand name are valuable as well.  For example, consumers and various employees of

department stores, specialty footwear stores, wholesalers and individuals who work in the

marketing, public relations and media industries often refer to SIGERSON MORRISON®

footwear by using only the term "Sigerson."

**Defendants Are Terminated For Cause**

11.     On August 24, 2006, each defendant entered into an employment agreement with

FSM (the "Employment Agreements"), pursuant to which defendants were retained to, among

other things, serve as Co-Heads of Design of SIGERSON MORRISON® products and perform

duties consistent with that position and status, as well as those duties that are "reasonably

assigned" to them. *See* Minsker Decl. Exs. 10-11. These duties included those typically assigned

to those holding a head designer position, such as designing, procuring or producing samples,

and overseeing the "DNA" for the SIGERSON MORRISON brand.  Each defendant received an

initial annual base salary of $350,000 pursuant to the Employment Agreements. *Id.* § 5(a).

12.     Since 2006, defendants have been responsible for delivering a SIGERSON

MORRISON® product line for each pre-specified shoe "market."  During a market, store buyers

from around the United States and internationally come to the SIGERSON MORRISON

4

showroom in New York, New York to view the samples of the new SIGERSON MORRISON®
collection. Buyers review the collection and then place orders for SIGERSON MORRISON®
footwear that they expect to sell in their stores in approximately four to six months.

13.    In general, there are four shoe markets a year, including a market in December.
In 2009, FSM and defendants made a conscious decision not to have a shoe market for
SIGERSON MORRISON at the December 2009 market. In 2010, FSM and defendants decided
to reinstate the December market. This decision was made many months prior to the start of the
design process for the December 2010 market. FSM dedicated resources and expected sales
results accordingly.

14.    It was always defendants' responsibility as Co-Heads of Design to deliver an
acceptable collection for the pre-specified shoe markets, including the December 2010 market.

15.    In the months leading up to the December 2010 market, defendants never
indicated that there would not be a SIGERSON MORRISON® product line to show for the
December 2010 market.

16.    However, just days before the opening of the December 2010 market, at which
time the collection was to be shown to buyers, defendants advised me that we could not show the
collection as received from the Italian factories because defendants believed the samples were
not fit to be shown to buyers. According to defendants, the samples were of poor quality and did
not meet defendants' expectations and would be unacceptable to show to buyers.

17.    Defendants' assertion in their papers that they and FSM "jointly" made the
decision to withhold the December 2010 collection from the market is misleading. After

reviewing the samples that defendants had represented were unsatisfactory, I agreed and had no choice but to cancel our December 2010 market appointments.  As a result, FSM was unable to market or sell any shoes during the December 2010 market and thus did not achieve our planned sales budget.

18.     Because of the substantial amount of time that it would take to have the samples remade, defendants could not have delivered an acceptable collection of SIGERSON MORRISON® footwear to be shown to buyers at the December 2010 market.

19.     In my more than twenty years of experience in the wholesale industry, no company with which I have been affiliated has planned to show a collection, made appointments with buyers and then failed to produce an acceptable collection to show them.  The failure to present a collection to these buyers during a scheduled market had a negative impact on the SIGERSON MORRISON brand and its reputation with buyers and resulted in a loss of revenue.

20.     On March 10, 2011, as a result of their failure to deliver a collection for the December 2010 market, FSM terminated defendants' employment for cause.  The delivery of that collection, as noted above, was a critical and essential responsibility of defendants under their Employment Agreements.

21.     The Termination Notices clearly explained that the basis for their termination was their material breach of the Employment Agreements because of their failure to produce and deliver the December 2010 collection and that such failure could not be cured.

22.     Defendants assert that "the Employment Agreements create no responsibility for defendants to produce a footwear collection for the December 2010 market."  Def. Opp. at 19.

To the contrary, defendants agreed in their Employment Agreements to "perform such other duties that are consistent with her position and status (i) that Employee previously performed . . . or (ii) that are reasonably assigned to her by the Manager." Minsker Decl. Exs. 9, 10 § 3(a). As described above, producing a collection for the December 2010 market was clearly within the scope of defendants' duties as co-heads of design, and were duties undertaken by them year after year.

23.    After they were terminated, defendants closed the 71st Street Store. However, defendants still owe FSM approximately $350,000 for SIGERSON MORRISON® merchandise and expenses paid on their behalf. *See* Minsker Decl. Ex. 15.

24.    FSM has no current plans to close all SIGERSON MORRISON™ stores or to discontinue its production of SIGERSON MORRISON® merchandise.

_____
Susan Itzkowitz

Sworn to before me this
27 day of May, 2011

_____
Notary Public

BARBARANNE ELWOOD
NOTARY PUBLIC
MY COMMISSION EXPIRES SEP. 30, 2011